U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 1 2 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY
SHREVEPORT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAMES SAXON, ET AL.                    CIVIL ACTION NO. 06-2339

versus                                 JUDGE HICKS

RONALD C. THOMAS, ET AL.               MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

### Introduction

Plaintiffs, who were injured in an automobile accident, filed suit in state court against the driver of the other vehicle, his employer and an insurer. Defendants removed based on an assertion of diversity jurisdiction. Before the court is a Motion to Remand (Doc. 11) that challenges the presence of the requisite amount in controversy. For the reasons that follow, the Motion to Remand will be granted, and Defendants' attorneys will be ordered to pay $1,000 in fees and costs caused by the removal.

### Amount in Controversy Requirement

The court has an independent duty to ascertain that it has subject matter jurisdiction over a civil action. Torres v. Southern Peru Copper Corp., 113 F.3d 540, 542 (5th Cir. 1997). "There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). In a removed case, the removing defendant has the burden of showing that the amount in controversy element of diversity jurisdiction is satisfied. In determining whether the defendant has met that burden, the court may look to the plaintiffs' pleadings to see whether

it is facially apparent that the claims are for more than $75,000. The removing attorney may also support jurisdiction by setting forth the facts in controversy, either in the notice of removal or by affidavit, that support a finding of the requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

This case was filed by three plaintiffs. If the amount in controversy for one plaintiff's claim exceeds $75,000, and the parties are diverse, then 28 U.S.C. § 1367 confers supplemental jurisdiction over claims by the other plaintiffs even if those claims do not individually satisfy the jurisdictional amount. Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S.Ct. 2611 (2005).

**Relevant Allegations and Asserted Facts**

The state court petition alleges that defendant Ronald Thomas was driving a Peterbilt truck on I-49 when the vehicle lost the rear wheels. Plaintiffs were traveling in a Toyota Camry that struck the wheels. The three Plaintiffs, in accordance with Louisiana procedural law, did not pray for any particular amount of damages. Each Plaintiff alleged that the accident caused unspecified "injuries" that required unspecified "medical treatment." The petition alleged that the kinds of damages they sought include physical pain and suffering, mental pain and anguish, past and future medical expenses, loss of consortium, "disability," and property damage. The petition gave no hint as to the nature or amount of these alleged damages.

Defendants' Notice of Removal offered no new facts. Defendants did point out that Plaintiffs had not taken advantage of a Louisiana procedural device that permits a Plaintiff to plead that the amount in controversy is less than the amount that would give rise to diversity jurisdiction. Defendants also pointed to the paragraphs in the petition that listed the categories of damages sought, particularly the claims for "disability."

The court issued a Memorandum Order (Doc. 9) that observed that Defendants did not adequately plead the citizenship of two defendants and that there were insufficient facts presented in the petition and notice of removal to meet the removing parties' burden of establishing that at least one plaintiff's claim puts more than $75,000 in controversy. The order cited another removed case, <u>Hampton v. Fred's Stores</u>, 06 CV 721, for an extensive explanation of the rules regarding the amount in controversy and a history of the removing lawfirm's repeated failures to comply with those rules.

The court afforded Defendants time to file an Amended Notice of Removal and attempt to cure the defects. The order stated: "If Defendants do not cure the defects and Plaintiffs file a Motion to Remand that is granted, the court will order the removing parties to pay the associated attorney's fees and costs." Doc. 9.

Defendants responded with an Amended Notice of Removal that cured the citizenship deficiencies. With respect to the amount in controversy, the amendment did no more than repeat that Plaintiffs had alleged that they suffered damages that fell within various categories such as physical pain and suffering, medical expenses, and disability. Defendants

asserted that the mere listing of those categories of damages, together with the assertion that Plaintiffs had continuing pain, medical treatment and disability were sufficient to meet Defendants' burden.

**The Motion to Remand**

    **A. Facially Apparent**

Plaintiffs filed a Motion to Remand (Doc. 11) on the grounds that Defendants had not met their burden of establishing the required amount in controversy. Plaintiffs noted that, with respect to pleadings that list various categories of damages (medical expenses, pain and suffering, mental anguish, etc.) without any indication of the amount sought or the nature of the underlying injuries, medical care and other losses, the court had spoken to that issue in Hampton v. Fred's Stores. The undersigned wrote in that case: "The same categories of damages are often prayed for in cases that have far less than $75,000 in controversy, so their generic listing adds almost nothing toward satisfying the removing party's burden."

The petition has no description whatsoever of the claimed "injuries," "disability" or medical expenses that would allow any reasonable estimation that the amount in controversy exceeds $75,000. Were the injuries mere cuts and scrapes, or were they broken bones or severe internal injuries? Were the medical expenses $300 for an office visit, or was an expensive surgery or other care required? Is the alleged "disability" a partial, temporary limitation of a finger that caused no lost wages, or is it claimed to be total, permanent and career ending? Are the alleged future medical expenses claimed to include frequent or

expensive care, or will they be no more than an office visit or follow-up examination? None of these situations, based on the meager information available in the petition and notice of removal, is more likely than any other. A person is left to simply guess, and that is not sufficient for a removing party to have met its burden under the "facially apparent" test.

In <u>Gebbia v. Wal-Mart Stores, Inc.</u>, 233 F.3d 880 (5th Cir. 2000), the plaintiff's request for various categories of damages was treated as relevant, but the plaintiff's petition in that case also set forth some facts about the injuries that indicated a potentially significant amount of such damages was at stake. The <u>Gebbia</u> petition described injuries to the plaintiff's right wrist, left knee and patella, and upper and lower back. The petition in this case, in contrast, includes *no* facts about the nature or extent of the "injuries" to any Plaintiff.

If the scant facts set forth in this petition, combined with a prayer for certain categories of damages (prayed for in almost every personal injury case of any magnitude) were deemed adequate to allow federal diversity jurisdiction, there would be very few slip and fall, car accident or other personal injury cases that would not meet the amount in controversy requirement. Congress's imposition of a $75,000 threshold for removal of such cases would be eviscerated. <u>See</u> <u>Guillory v. Chevron Stations, Inc.</u>, 2004 WL 1661201 (E.D. La. 2004)(distinguishing <u>Gebbia</u> and remanding knee injury case despite claims for several categories of damages).

### B. Untimely Memorandum

Defendants did not file a timely opposition to the Motion to Remand, but they did later file a Motion for Leave (Doc 13) that requested permission to file an untimely memorandum. Defendants, in explaining their delay, reported that counsel for Plaintiffs had indicated at a deposition that Plaintiffs would stipulate that their damages do not exceed $75,000 and that the parties would jointly seek remand. Defendants reported that they later came to believe that Plaintiffs would not agree to that resolution and, thus, Defendants wanted to oppose remand.

Plaintiffs filed an opposition to the motion for leave. They contend that there were some discussions on the topic of stipulations and a joint motion to remand, but they say no agreement was reached. The opposition implies that Plaintiffs' counsel may have agreed to the arrangement but could not get the consent of his clients.

Defendants' Motion for Leave (Doc. 13) is granted. Defendants should have sought an extension of time before the deadline expired, but the court will grant leave nonetheless, primarily because the untimely material, even if it were properly set forth in or attached to an amended notice of removal, would still fail to meet Defendants' burden.

### C. Defendants' Additional Facts

Defendants' untimely memorandum focuses on the claims of Plaintiff Margie Greening. If her claims satisfy the amount in controversy element of diversity jurisdiction, the court will have supplemental jurisdiction over the claims of the other plaintiffs. Exxon,

125 S.Ct. 2611. Answers to discovery by Ms. Greening list five physicians and a physical therapist who have provided her care since the accident. Ms. Greening, in response to an interrogatory, identified no medication that she was taking in connection with the injuries. When asked if she had been confined to her bed or home, she responded that she "stays at home on days that she does not trust her knee to drive." Ms. Greening was asked to itemize all past, present and future medical expenses, and she listed approximately $4,700 worth of such items.

Ms. Greening was asked to provide a dollar figure for each of the items of damages prayed for in her petition (physical pain, mental pain, medical expenses, disability, lost wages, etc.). Plaintiff simply listed again the $4,700 in medical expenses, approximately $240 in medical records and court costs, and stated that she sought the "highest amount allowed by law" for physical and mental pain and suffering. Ms. Greening did not list any particular amount for the alleged disability, lost wages or property damages. Ms. Greening was asked whether she missed any time from work because of the accident, and she wrote "not applicable" and clarified that she was "not making a lost wage claim."

Medical records attached to the untimely memorandum show that Ms. Greening was a 65-year old female who was riding in the back seat of the car, with her seat belt on, when the car struck the truck wheels and then ran off the road and down a fifty foot embankment. The car stopped at a fence. The airbags had deployed on the side of the car. Ms. Greening

was knocked unconscious, but she was helped from the car and taken by ambulance to the emergency room.

A report from ten days after the accident stated that most of Plaintiff's pain had been on the left side of her neck, left hip and right knee. Dr. Gleason referred Plaintiff to physical therapy on an out-patient basis and suggested she avoid vigorous activities and return in two weeks. Physical therapy notes show that Plaintiff made four visits and responded favorably with decreased pain and increased motion and strength. The notes stated that treatments would continue.

Less than a month after the accident, Dr. Gleason reported that Plaintiff was better, especially in regard to her neck. Her major complaint that day was her left hip and that she was "still having some pain in her right knee." Physical therapy notes from about one week later indicate that Plaintiff was "discharged on a home exercise program."

Less than two months after the accident, Plaintiff's right knee "seem[ed] to be getting back to where it was previous to the injury." Plaintiff's neck still hurt "a little bit" and she was still having "some discomfort occasionally" in her lower back.

About four months after the accident, an MRI of Plaintiff's knee showed a complex tear in the lateral meniscus posterior horn. Dr. Gleason referred Plaintiff to Dr. Waddell for "evaluation and probably arthroscopic surgery." Dr. Waddell saw Plaintiff, who told him that she had some loss of motion, related to popping, but denied any swelling or pain of the knee with activity or at rest. Dr. Waddell wrote: "She does not want any surgery at this

time." Plaintiff returned a few months later for a follow-up examination and reported a "slight increase in pain secondary to increase in activity." Plaintiff was told to return to the clinic in one year.

Defendants cite cases which they say approved general damage awards of $68,000 and $75,000 for a torn medial meniscus.[1] It is certainly possible that such an injury, if sufficiently severe, could give rise to an amount in controversy in excess of $75,000. But each case must stand on its own facts. The facts presented in this case show neck and back

---

[1] Plaintiffs cite Younce v. Pacific Gulf Marine, Inc., 817 So.2d 255 (La. App. 4th Cir. 2002) ($68,000), but the knee injury in that case required surgery and was assessed as causing a 5% to 10% partial disability. And, not mentioned by Plaintiffs, the appellate decision they cite was *reversed* by the Supreme Court of Louisiana at 827 So.2d 1144 (La. 2002) because the trial judge had a conflict of interest in favor of the plaintiff. The also cite Corliss v. Elevating Boats, Inc., 599 So.2d 434 (La. App. 4th Cir. 1992)( $75,000.00). The plaintiff in that case underwent surgery.

Other reported cases suggest that much less than $75,000 can be expected for a more simple knee injury such as presented in this case. In Tauzier v. Kraus, 845 So.2d 1208 (La. App. 5th Cir. 2003) the court affirmed a jury award of $2,000.00 in general damages for a torn medial meniscus that required surgery, several months of therapy and generated almost $18,000 in medical expenses. In Lacomb v. Buras, 778 So.2d 1181 (La. App. 3 Cir. 2001), the plaintiff sustained an injury to her knee in a car wreck. She visited her doctors five times over ten months, complaining that her knee bothered her. She attended physical therapy sporadically, and did not miss any work. The appellate court affirmed an award of $4,000.00 in general damages. In Cormier v. Colston, 918 So.2d 541 (La. App. 3rd Cir. 2005), a plaintiff injured her right knee (torn meniscus) and had significant pain, effusion, locking and giving way. Treatment included a series of injections, and the physician predicted an $8,000 surgery would be required. Medical expenses before trial were $3,276.50. The jury awarded $15,000 in future medical expenses. The appellate court added awards of the past medicals and $30,000 in general damages, which it thought was the minimum reasonable award. The total award, for injuries more serious than in this case, was less than $50,000. See also Carmouche v. Cooley, 2006 WL 1663822 (E.D. La. 2006) ($12,000.00 in general damages awarded for the aggravation of pre-existing knee condition, which required two months of conservative treatment with prescription medications and physical therapy).

pain that quickly resolved, a bare diagnosis of a torn meniscus with almost no treatment, a plaintiff who refused surgery for the knee injury, less than $5,000 in total medical and therapy expenses, and no evidence of continuing pain of any significant degree. Those facts do not satisfy Defendants' burden of showing that it is more likely than not that the amount in controversy exceeds $75,000. The motion to remand will, therefore, be granted.

**Attorney Fees**

An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no presumption in favor of awarding fees following a remand, and the use of the term "may" in Section 1447(c) leaves the district court with discretion, with no heavy congressional thumb on either side of the scales. Martin v. Franklin Capital Corporation, 126 S.Ct. 704 (2005).

That discretion is to be guided by the standard that: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 711. "Conversely, when an objectively reasonable basis exists, fees should be denied." Id. The district court also retains discretion to consider whether unusual circumstances warrant a departure from that rule in a given case. Id. If an award is deemed appropriate, the court may award the "fees and costs incurred in federal court that would not have been incurred had the case remained in state court." Avitts v. Amoco, 111 F.3d 30, 32 (5th Cir. 1997).

Defendants did not have an objectively reasonable basis to seek removal of this case. The few facts they offer that lend any support to their amount in controversy burden were not discovered or produced by Defendants until long after they removed the case, and only after prodding by the court and a motion to remand by Plaintiffs. When the case was removed, the Defendants apparently knew nothing more than they had been sued by persons who (1) claimed that they had suffered unspecified injuries in a car accident and (2) alleged that they had received unspecified medical treatment and (3) sought damages in a number of categories. That is true in almost every tort suit filed in state court, but not every case is susceptible to removal.

The court has explained, in similar cases removed by counsel for Defendants, that the 30-day removal period does not commence by service of the original petition unless "that pleading *affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court. Chapman v. Powermatic, Inc., 969 F.2d 160 (5th Cir. 1992) (emphasis added). That is certainly not the situation in this case, so Defendants were not required to remove until they received an amended pleading or other paper that made it "unequivocally clear and certain" that more than $75,000 was in controversy. Bosky v. Kroger Texas, L.P., 288 F.3d 208 (5th Cir. 2002). Defendants were certainly free to remove the case before such a removal period was triggered, but *only* if they could articulate facts that would satisfy their burden. Defendants removed prematurely and,

when given an opportunity to produce the necessary facts, they fell far short of satisfying their burden.

The court noted in the Hampton case that the lawfirm that represents Defendants, Ungarino and Eckert, has filed far too many bare bones removals. Almost every notice of removal filed by the firm in recent years has been defective for one reason or the other, with the most common problems being failure to meet the minimal requirements of pleading the parties' citizenship and failure to plead or point to facts adequate to satisfy the amount in controversy requirement. See, e.g., McClelland v. A I G Ins Co Inc, 02 CV 822 (court ordered defendant to amend notice of removal with respect to amount in controversy); Century Surety Co. v. Hays Brothers Angus Ranch, 04 CV 0010 (amended notice of removal ordered because citizenship of individuals and an LLC not properly pleaded); West v. State Farm, 03 CV 1118 (amended notice of removal ordered to clarify whether non-diverse party had been dismissed); Jackson v. Braden, 04 CV 0313 (citizenship of corporation not properly alleged; case remanded because assertion that a defendant was fictitious proved incorrect); Pinkney v. Family Dollar, 04 CV 1175 (corporation's citizenship and amount in controversy not properly alleged; defendant did not respond to order to amend, so case was remanded); Folks v. Goforth, 05 CV 0215 (court ordered amended notice of removal because defendants did not plead state of incorporation for four corporate defendants); Woods v. Eckerd, 05 CV 704 (court ordered defendant to amend notice of removal with respect to amount in controversy); Shyne v. Ryan's Family Restaurant, 05 CV 1190 (court ordered defendant to

allege its own citizenship properly and plead facts to support the amount in controversy); Evans v. Family Dollar, 05 CV 1517 (court ordered defendant to properly plead its own citizenship and establish the amount in controversy); and Atkinson v. Laich Industries Corp., 05 CV 966 (amended notice of removal ordered to properly plead citizenship of two corporate defendants).

The court then wrote:

> Those repeated failures have wasted numerous hours of the court's time reviewing inadequate notices of removal, crafting orders that directed counsel as to how to cure the defects and then reviewing the efforts made to address the defects. *It is time for such poorly prepared notices of removals to stop.* Counsel *must* learn the rules regarding how to plead the citizenship of persons and entities, and they must make a concerted effort not to remove cases without pleading or pointing out specific facts in the petition that meet the defendant's burden of satisfying the amount in controversy element of diversity jurisdiction. The rules have been set forth over and over in orders sent to counsel in cases such as those cited above, but the court's efforts have apparently been wasted because the same mistakes continue to this day.

The Hampton order added that the court would consider sanctions or other deterrents, such as the imposition of fees and costs if a case is remanded.

Despite the order in Hampton that issued in May 2006, the Ungarino and Eckert firm filed the deficient notice of removal in this case in December 2006. The notice of removal in this case did not properly plead the citizenship of two corporate defendants, and the amount in controversy benefitted from no facts beyond the bare bones petition. Considering all of these circumstances, the imposition of fees and costs is in order.

A review of the record, including the motion to remand filed by Plaintiffs, supports a conclusion that $1,000 is a reasonable award of attorney's fees and expenses that were incurred by Plaintiffs as a result of Defendants' wrongful removal. That is reasonable compensation for the time Plaintiffs' counsel spent monitoring the federal procedural proceedings, participating in discovery or discussions relevant to the amount in controversy issue, preparing a motion to remand, and responding to Defendants' motion for leave to file an untimely memorandum.

The court has discretion to order that the fees be paid by Defendants, their attorneys or both. State of Wisconsin v. Missionaries to the Preborn, 798 F.Supp. 542 (E. D. Wis. 1992). The several defective removals noted above and the notice of removal filed in this case were made on behalf of several different defendants, but all of the removals were effected by Ungarino and Eckert. The best exercise of the court's discretion in these circumstances is to order that the entire $1,000 be paid by Ungarino and Eckert and not their clients. An order consistent with this ruling will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 11th day of April, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE